UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KAREN HOFFEE,

          Plaintiff,

v.

WALMART INC.,

          Defendant.

Case No. 3:18-cv-01497-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Karen Hoffee ("Hoffee") sues Defendant Walmart, Inc. ("Walmart") for negligence. The claim arises from injuries Hoffee sustained when she slipped and fell on Walmart's premises in McMinnville, Oregon. Walmart moves for summary judgment asserting there are no genuine issues of fact, and it is entitled to judgment as a matter of law. For the reasons set forth below, Walmart's Motion for Summary Judgment (ECF No. 15) is DENIED.[1]

---

[1] The parties have consented to jurisdiction by a United States Magistrate Judge in accordance

*Background*

On September 20, 2017, Hoffee entered the McMinnville Walmart. (Pl.'s Am. Compl. ("Compl.") ¶ 2, ECF No. 34.) She entered through a vestibule, the tile floor of which was partially covered with a carpeted mat. (Decl. of Jessica Lancaster ("Lancaster Decl."), Dep. of Karen Hoffee ("Hoffee Dep.") at 58:2–12, ECF No. 17-1.)[2] Although the mat covered the length of the vestibule, at three and one-half-feet wide it did not cover the vestibule's width. (Decl. of Gary Norris ("Norris Decl."), Ex. 3, ECF No. 36; Dep. of Clinton Nelson ("Nelson Dep.") at 24:1–5, 33:9–21, ECF No. 36-1.)

It had been raining that day. (Nelson Dep. at 12:3–18.) Walmart had placed a "wet floor" cone at the entrance, at least one hour before Hoffee entered the store. (Norris Decl., Ex. 3.) Hoffee entered the vestibule and had taken one or two steps on the carpet when a person began walking beside her from her left. (Lancaster Decl., Hoffee Dep. at 61:2–7.) Hoffee stepped forward and off the carpet with her right foot and fell. (*Id.*, Hoffee Dep. at 63:14–17.) She did not notice puddled water, dirt, or mud in the area where she fell. (*Id.*, Hoffee Dep. at 65:16–24.) Hoffee's clothes did not get wet from the fall, but the palms of her hands were wet after touching the floor. (*Id.*, Hoffee Dep. at 65:8–11; Decl. of Karen Hoffee ("Hoffee Decl.") ¶ 4, ECF No. 38.)

Customer Store Manager Kim Schultz saw Hoffee fall and helped her up. (Decl. of Kim Shultz ("Shultz Decl.") ¶ 2, ECF No. 18.) Ms. Schultz did not see water in the vicinity before or after Hoffee fell. (*Id.* ¶ 3.) Ms. Schutz did not have to complete a Walmart "spill cleanup" form

---

with 28 U.S.C. § 636(c)(i).
[2] The parties submit only excerpts of their depositions, and all depositions are cited according to their internal pagination unless otherwise cited to the record.

after Hoffee fell because there was no spill to cleanup. (*Id.* ¶ 4.) As a result of her fall, Hoffee sustained injuries to her left knee. (Compl. ¶ 5.)

Hoffee filed this suit alleging negligence against Walmart in one or more of the following ways: (a) failure to locate an area rug or other slip resistant/absorbent material in the area where Hoffee fell; (b) failure to warn customers that the area rug was not wide enough to avoid slippery areas of the floor; (c) failure to adequately inspect the floor to ensure it had not become wet or slippery from rainwater; (d) failure to mop or remove the rainwater; (e) installation of flooring that became excessively slippery when wet; (f) failure to adequately discover the floor became excessively slippery; (g) failure to adequately warn customers that the floor was excessively slippery when wet; (h) failure to install flooring that would not present a fall hazard; (i) failure to adequately cover the entry way flooring with a rug or other non-slip material; (j) use of a three-and-a-half foot wide rug when it was possible to have used a wider rug; and (k) allowing the rug to shift position exposing a larger area of flooring on one side. (Compl. ¶ 4.) Walmart moves for summary judgment asserting it did not know or should not have known about the rainwater on its floor and, therefore, is entitled to judgment as a matter of law. (Def.'s Mot. Summ. J. at 1–2, ECF No. 16.)

*Legal Standards*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

Hoffee brings a common-law negligence claim against Walmart. To prevail on a negligence theory under Oregon law, a plaintiff must show: (1) that the defendant owed plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach was the cause in fact of legally cognizable damage to the plaintiff. *Brennan v. City of Eugene*, 285 Or. 401, 405 (1979). Beyond the ordinary duty of reasonable care, a "possessor of land" owes a business invitee a heightened duty of care: "to maintain the premises in a reasonably safe condition in order to protect [the invitee] from conditions that create[ ] an unreasonable risk of harm and to exercise that duty by either eliminating any such condition or warning of the risk to enable the invitee to avoid the harm." *Ault v. Del Var Properties, LLC*, 281 Or. App. 840, 845 (2016), *rev. denied*, 361 Or. 311 (2017).

"The overarching principle [of premises liability] law is that the owner owes a duty to invitees to keep its premises—including its floors—in a reasonably safe condition." *Moorehead v. Tri-County Metropolitan Transp. Dist. of Or.*, 273 Or. App. 54, 68 (2015). Ordinarily, in cases where an invitee was injured by slipping on a foreign substance on the floor of a business, liability does not attach unless "the owner had actual or constructive knowledge of the foreign substance and failed to use reasonable care to remove it." *Id.* "Water, including tracked-in rainwater, is a foreign substance." *Id.* An invitee can establish the owner's knowledge of the substance in one of three ways:

    (a) That the substance was placed there by the occupant, or

    (b) That the occupant knew that the substance was there and failed to use reasonable diligence to remove it, or

Page 5 – OPINION AND ORDER

> (c) That the foreign substance had been there for such a length of time that the occupant should, by the exercise of reasonable diligence, have discovered and removed it.

*Id.* at 69 (citing *Cowden v. Early et al.*, 214 Or. 384, 387 (1958)).

Walmart denies that it fits into any of the three categories above. Walmart also contends Hoffee has failed to show evidence that it "caused" rainwater to accumulate, it "actually knew" rainwater accumulated, or it "should have known" rainwater accumulated. (Def.'s Mot. Summ. J. at 4–5.) Hoffee argues this case is not a "foreign substance" case, instead characterizing her claim as a "condition" case and concludes Walmart's motion should fail because its premise is incorrect. (Pl.'s Opp'n to Def.'s Mot. Summ J. ("Pl.'s Opp'n") at 2, ECF No. 35.) Hoffee's argument is more persuasive to the extent Hoffee offers evidence that Walmart knows its floor becomes excessively slippery when wet, and Walmart knows its vestibule floor can become wet during rainy weather. However, the line of demarcation between a "foreign substance" case and a "condition" case is not as bright as the parties argue.

Generally, this "foreign substance" inquiry is a threshold requirement that must be satisfied before the court may evaluate the "condition" issue. *See Moorehead*, 273 Or. App. at 324 ("absent proof of the defendant's knowledge of the foreign substance on the floor, a plaintiff's case fails, and whether the foreign substance created an unreasonable risk of harm is a moot point. It is not surprising, then, that the courts in those cases do not address whether a plaintiff has to prove that as an element of her claim."). The parties incorrectly presume "foreign substance" cases and "condition" cases are two separate kinds of cases. All "foreign substance" cases are "condition" cases (although the inverse is not always true), though many cases never address the "condition" issue because a plaintiff fails to show a defendant knew or should have known about

the foreign substance. *See, e.g., Pavlik v. Albertson's Inc.*, 253 Or. 370 (1969) (slip and fall from a lettuce leaf on the floor); *Dubry v. Safeway Stores, Inc.*, 70 Or. App. 183 (1984) (same); *Rex v. Albertson's, Inc.*, 102 Or. App. 178 (1990) (slip and fall from a blueberry on the floor); *Diller v. Safeway Stores, Inc.*, 274 Or. 735 (1976) (slip and fall from ice and water on the floor in produce section); *Laygui v. Wal-Mart Stores, Inc.*, No. 6:13–cv–00327, 2014 WL 3695536 (D. Or. 2014) (slip and fall from laundry detergent on floor).

Walmart first contends because Hoffee did not notice puddles of water on the floor, she did not carry her burden to show that the floor was wet. Hoffee stated in her declaration that her palms were wet from touching the tile floor after she fell. (Hoffee Decl. ¶ 4.) Walmart argues that Hoffee's declaration contradicts her earlier deposition stating she did not notice puddles on the floor, therefore Hoffee has not created an issue of fact about the floor being wet. (Def.'s Reply at 1–2, ECF No. 41.) The court disagrees Hoffee's declaration contradicts her deposition testimony. A reasonable factfinder could conclude that a floor can be wet without a floor having puddles of water.

Walmart also contends Hoffee failed to show Walmart knew or should have known the floor was wet. At oral argument, the parties agreed that Hoffee might only be able to satisfy the third element—the rainwater had been on the floor for such a length of time that Walmart should have discovered and removed it. The only evidence Hoffee offers is that approximately one hour and forty minutes elapsed between Walmart conducting a safety sweep of the vestibule and Hoffee's fall. (Pl.'s Resp. at 11–12.) Hoffee concludes this was enough elapsed time that Walmart should have discovered rainwater on the floor. (*Id.*) During oral argument, Walmart argued Hoffee failed to offer any evidence showing how long the floor had been wet, and it could

have been Hoffee herself that tracked in the rainwater just prior to her fall. Oregon law recognizes "[i]n the absence of proof from which a reasonable inference can be drawn as to how long the substance was on the floor, there is no basis for a finding of negligence." *Diller*, 274 Or. at 739. On this point, Hoffee cannot carry her burden.

Walmart contends because Hoffee cannot show Walmart placed the rainwater, or had actual or constructive knowledge of the rainwater, Hoffee's case ends here. However, Hoffee offers evidence from her expert, Gerald Marx, that Walmart's floor does not meet slip resistance standards required under Oregon Structural Specialty Code. (Decl. of Gerald Marx ("Marx Decl.") ¶ 8, ECF No. 37.) Hoffee, in effect, does not argue that she slipped on a foreign substance—rainwater in this case—but that Walmart was negligent in installing flooring that became excessively slippery when wet. Stated differently, the foreign substance is not what created the hazardous condition, but rather the characteristics of the floor itself is the hazard.

Whether Walmart knew or should have known its floor was wet does not end the court's inquiry. Hoffee must show Walmart knew its floor was slippery, and the slippery floor presented an unreasonable risk of harm. *See Moorehead*, 273 Or. App. at 69. Hoffee offers evidence Walmart was aware its floors are slippery when wet. First, Hoffee provides Walmart's standard operating procedure for minimizing the impact of inclement weather which states: "Wet surfaces pose slip, trip, and fall hazards. Monitor conditions closely." (Norris Decl., Nelson Dep., Ex. 10.) Second, Hoffee provides deposition testimony that a Walmart employee, who saw Hoffee fall, knew the floor becomes slippery when wet. (*Id.*, Shultz Dep. at 12:13–16.) Third, Hoffee provides a "customer incident report" dated October 10, 2015, showing a customer slipped and fell under similar circumstances as Hoffee. (Norris Decl., Ex. 2, ECF No. 36-5.) Walmart

contends the customer incident report is inadmissible at trial pursuant to FED. R. EVID. 403 because unfair prejudice would outweigh its probative value. (Def.'s Reply at 4–5.) Hoffee presents the evidence to show Walmart had actual knowledge its floor was slippery when wet, which is relevant, and whatever prejudice Walmart may suffer, it is certainly not unfair. Hoffee has provided sufficient evidence that creates an issue of fact as to whether Walmart knew its floor was slippery.

The Oregon courts typically regard slippery floors as an unreasonable risk of harm. *See Wilk v. Georges*, 267 Or. 19, 24–26 (1973); *Moorehead*, 273 Or. App. at 70–71. Oregon law also establishes two different duties of reasonable care. The first category refers to hazards that, provided the invitee has knowledge of the hazard, she can be expected to take care of herself. *Wilk*, 267 Or. at 25. Examples include an obstruction in the sidewalk or an unexpected step. *Id.* In these cases, if the possessor has not removed the hazard, the possessor will have satisfied his duty of care if he warns the invitee of the hazard. *Id.* The second category refers to those hazards that, despite the invitee's knowledge of the hazard, "cannot be negotiated with reasonable safety." *Id.* The second category is regarded as an unreasonably dangerous hazard, and the possessor has more than a duty to warn: he must take reasonable steps to remove or ameliorate the danger. *Dawson v. Payless for Drugs*, 248 Or. 334, 338 (1967). The action that "must be taken to protect an invitee . . . will depend on the circumstances, including the nature of the risk, the possessor's knowledge, and the arrangement or use of the premises." *Ault*, 281 Or. App. at 847. In the situation where a floor is made slippery by tracked in rainwater, Oregon law does not require the possessor "to have someone mop up after each customer who enter[s]." *Pribble*, 249 Or. at 188 (quoting *Gill v. Meier & Frank Co.*, 208 Or. 536, 537 (1956)). Rather, the Oregon courts hold

that other methods can be employed to make a wet floor safe, such as using rugs or mats in an entryway or use of slip-resistant flooring. *Id.* at 189; *Moorehead*, 273 Or. App. at 71.

In the present case, Hoffee submits evidence from Gerald Marx, a certified tribometrist,[3] that the tile flooring, when wet, has a friction measurement of 0.26–0.29. (Marx Decl. ¶ 7.) Marx states that a value of 0.1 is similar to ice, and there is a low probability slipping at values above 0.5. (*Id.*) Additionally, Hoffee submits evidence that customers sometimes step off the carpeted mats onto the tile floor, and that larger mats are available that fit in the vestibule. (Nelson Dep. 24:11–14; Marx Decl. ¶ 10.) Whether width of the mats leaving exposed tile and the tribometer value of Walmart's tile floor constitutes an unreasonable risk of harm or is unreasonably dangerous is a question for the factfinder.

*Conclusion*

Genuine issues of fact preclude judgment as a matter of law. Accordingly, Walmart's Motion for Summary Judgment (ECF No. 15) is DENIED.

DATED this 19th day of December, 2019.

JOHN V. ACOSTA
United States Magistrate Judge

---

[3] A tribometrist is a person who measures slip resistance using a tribometer.